# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

LISA C.,[1]

                                         Plaintiff,

     v.

                                                        3:21-CV-0037
KILOLO KIJAKAZI,                                          (ATB)

                                         Defendant.

PETER A. GORTON, ESQ., for Plaintiff
LOUIS J. GEORGE, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y.

Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.   PROCEDURAL HISTORY

On May 20, 2019, plaintiff protectively filed an application for supplemental

security income ("SSI"), alleging that she became disabled on September 14, 2012.

(Administrative Transcript ("T.") 81, 193–202).  Her application was denied initially on

September 25, 2019, and upon reconsideration on December 6, 2019.  (T. 81, 98,

103–07, 113–16).  Plaintiff requested a hearing, which was held by video conference on

---

[1]In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

May 12, 2020 before Administrative Law Judge ("ALJ") Bruce Fein.  (T. 44–67).

Plaintiff and Vocational Expert ("VE") James Cohen testified at the hearing. (*Id.*)  ALJ

Fein issued an unfavorable decision on June 10, 2020, which became the

Commissioner's final decision when the Appeals Council denied plaintiff's request for

review on November 17, 2020.  (T. 1–6, 8–26).

## II.    GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity
> that [she] is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which
> [she] lives, or whether a specific job vacancy exists for [her], or whether
> [she] would be hired if [she] applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20

C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI

disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If [she] is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which

> significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>FACTS</u>

Plaintiff was 41 years old as of the date of her administrative hearing.  (T. 52). She was married, and lived with her husband and their seventeen-year-old daughter. (*Id.*).  Plaintiff did not complete school past the eleventh grade, nor did she ever obtain her GED.  (*Id.*).

Plaintiff testified that she could not work due to stomach issues that caused "a lot of diarrhea."  (T. 55).  Her condition was exacerbated by "any kind of stress."  (*Id.*). Although she treated for her condition, the medication made her sick.  (*Id.*).  She

testified that she is "constantly going to the bathroom;" up to eight to ten times a day. (T. 56).  Her bathroom trips could take up to three to five hours, "depending on the situation that [she is] in."  (*Id.*).  Anytime plaintiff left the house, the first thing she looked for was a bathroom.  (*Id.*).  She would "never know" when the urgency would come on.  (*Id.*).  She usually went to the bathroom ten to fifteen minutes after a meal. (*Id.*).

Plaintiff testified that she "really can't lift anything," as it caused pain in her lower stomach.  (T. 58).  She was "very tired all the time," with "no energy."  (*Id.*). While out of the house, she had to constantly sit and "take a break for a while" before resuming her day.  (*Id.*).

## IV.   **THE ALJ'S DECISION**

At step one of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful employment since her application date of May 20, 2019. (T. 13).  At step two, the ALJ found that plaintiff's Crohn's disease was a severe impairment.  (T. 13–16).  At the third step, the ALJ determined that plaintiff's impairment did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 16).

At step four, the ALJ found that plaintiff had the RFC to perform sedentary work, except she could only frequently balance and occasionally stoop, crouch, crawl, kneel and climb ramps and stairs.  (*Id.*).  The ALJ found that plaintiff could not climb ropes, ladders, or scaffolds, and that she should avoid concentrated exposure to hazardous machinery.  (*Id.*).  The ALJ further found that plaintiff required a work setting with

ready access to a restroom, defined as being off task approximately four times a day for five minute increments; however, three out of the four occasions must occur during the plaintiff's regular employer-provided breaks during the workday. (*Id.*). Last, the ALJ found that plaintiff needed to work in a low stress job, defined as having only occasional decision-making, changes in the work setting, and use of judgement. (*Id.*).

In making this determination, the ALJ considered the medical evidence and medical opinions, together with the plaintiff's symptoms and hearing testimony. (T. 16–20). Based on the above RFC, the ALJ determined that plaintiff had no past relevant work. (T. 20–21). However, based on the VE's testimony and considering the plaintiff's age, education, prior work experience and RFC, the ALJ found that plaintiff could perform jobs which existed in significant numbers in the national economy. (T. 21–22). Thus, the ALJ found that plaintiff was not disabled for purposes of Social Security. (*Id.*).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1.    The ALJ failed to properly assess the frequency and duration of plaintiff's time off task due to the need for bathroom breaks. (Pl.'s Br. at 7–12) (Dkt. No. 13).

2.    The Appeals Council erred in failing to assess the persuasiveness of Dr. Hila's July 2020 opinion. (Pl.'s Br. at 12–13).

3.    The step five determination is not supported by substantial evidence. (Pl.'s Br. at 13–14).

Defendant argues that the Commissioner's decision is supported by substantial

evidence. (Def.'s Br. at 6–21) (Dkt. No. 14).[2]  For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision and dismiss the complaint.

## VI.    RFC/Weight of the Evidence

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8

---

[2]Plaintiff filed a reply brief (Dkt. No. 17), and defendant a sur-reply brief (Dkt. No. 20).

(N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990); *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluation of Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20

C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that, with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss,

the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Credibility/Consistency

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[3]  The evaluation of symptoms involves a two-step process.  First, the ALJ

---

[3] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).[4]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

---

[4] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

### B.     Analysis

Plaintiff argues that the ALJ's conclusion as to the amount of time plaintiff would be off task on account of her need to use the bathroom, as incorporated into the RFC determination, is not supported by substantial evidence.  As noted above, the ALJ found that plaintiff's claimed impairment of Crohn's disease was a severe impairment. In determining the limitations stemming from plaintiff's Crohn's disease, the ALJ considered plaintiff's testimony that she required "regular and lengthy bathroom trips" due to her symptoms.  (T. 17, 55–56).  The ALJ, however, found that plaintiff's subjective statements concerning her symptoms were not entirely consistent with the evidence of record.  (T. 18).  For example, plaintiff testified to requiring the use of the bathroom at what appears to be a debilitating frequency – up to eight to ten times a day, sometimes for three to five hours at a time.  These statements were properly called into question by the ALJ based on the medical evidence of record, as well as plaintiff's own testimony.  The ALJ pointed out that the majority of plaintiff's physical examinations from 2018 and 2019 showed normal abdominal findings with no distention or tenderness.  (T. 17–18, 399, 411, 424, 501, 505, 509, 513).  He also noted that plaintiff continued to gain weight during the relevant period, despite her allegations of severe and urgent bouts of diarrhea.  (T. 17–18, 505).  Notably, the ALJ considered that plaintiff's testimony as to her sustained activities of daily living, although limited to some extent by her need for proximity to a bathroom, did not reflect such drastic limitations.  (T. 18, 237–57, 268–75).

The ALJ also considered the opinion evidence of record, including the

September 24, 2019 opinion of non-examining state agency medical consultant Jay
Shaw, M.D.  (T. 77–79).  In his RFC determination, Dr. Shaw found that plaintiff could
perform sedentary work, with some postural limitations.  (T. 77–79).  In doing so, Dr.
Shaw recognized that plaintiff's Crohn's disease had "required frequent change in
treatments; however, for [the] most part her symptoms are reasonably controlled, and
[plaintiff is] able to maintain adequate nutritional needs."  (T. 78–79).  Dr. Shaw also
pointed to plaintiff's ability to take care of her husband and child, clean the house, do
laundry, cook, drive, go out alone and shop in stores, and be independent with her
personal care.  (T. 79).  The ALJ found Dr. Shaw's opinion "generally persuasive,"
noting that he had additionally found, out of an "abundance of caution," that plaintiff
also had "limitation[s] on hazards."  (T. 19).  In support of his evaluation of Dr. Shaw's
opinion, the ALJ cited to its consistency with plaintiff's gastroenterology treatment
record, along with plaintiff's self-reported ability to perform various activities of daily
living.  (*Id.*).

The ALJ also considered the December 18, 2019 assessment of plaintiff's
treating gastroenterologist, Amine Hila, M.D.  (T. 579–84).  Dr. Hila opined that
plaintiff's Crohn's disease with accompanying "abdomen pain" and "bowel trouble"
limited her to working less than four cumulative hours out of an eight hour work day.
(T. 579).  She further opined that plaintiff could never lift or carry any amount of
weight.  (*Id.*).  The treating physician limited plaintiff to standing and walking for less
than two hours in an eight hour workday, for no more than fifteen minutes at a time.
(*Id.*).  Likewise, she limited plaintiff to sitting for less than two hours in an eight hour

workday, only for periods of up to thirty minutes at a time. (*Id.*). Dr. Hila opined that plaintiff would need to spend the remainder of an eight hour workday lying down. (*Id.*). She indicated that plaintiff could not perform any of the listed postural functions, could never reach or twist, and could only occasionally perform fingering, feeling, handwriting, and typing. (T. 579–80). Dr. Hila further opined that plaintiff would have four or more unplanned absences from work per month. (T. 580). She attributed plaintiff's absenteeism to "frequent, urgent bowel movements, pain, [and] fatigue." (T. 582). Dr. Hila also indicated that plaintiff would require unscheduled breaks beyond standard work breaks; for fifteen to twenty minutes every thirty minutes. (T. 580). She opined that plaintiff would need to recline, lie down, or elevate her legs above her waist for "75-100%" of her day. (*Id.*).

The ALJ specifically evaluated Dr. Hila's December 2019 opinion in his written decision. (T. 20). In doing so, he found her assessment to be "unpersuasive, as it is extreme and unsupported by [Dr. Hila's] treatment notes." (*Id.*). The ALJ cited to plaintiff's generally normal "longitudinal physical examinations" by both Dr. Hila and plaintiff's primary care physician, including positive bowel sounds and weight gain at every visit, "even when the claimant complained of frequent vomiting and diarrhea." (*Id.*). The ALJ further noted that there was no indication from Dr. Hila's treatment records that plaintiff suffered from such extreme exertional and nonexertional limitations during her course of treatment. (*Id.*).

For the following reasons, the court finds that the ALJ's evaluation of the

aforementioned medical evidence,[5] as well as his RFC determination for modified sedentary work, was supported by substantial evidence and need not be disturbed.  At the outset, it is well settled that under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims.  *See Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30, 2021) (acknowledging that under the old regulations, the report of a non-examining state agency medical consultant may constitute substantial evidence under the appropriate circumstances); *see also* 2017 WL 168819 at *5853 (discussing how under the new regulations, the opinions of all medical sources, including non-examining medical consultants, will be held to the same standard of persuasiveness of content).

Moreover, state agency experts are instructed to assess the plaintiff's work-related functions "on a sustained basis," which includes the ability to work an eight-hour day for a five-day week. (Program Operations Manual System ("POMS") §§ DI 24510.001A.3.a, DI 24510.004C.2.b, DI 24510.050; *see also* POMS DI § 24510.006 (directing state agency physicians to follow Social Security Ruling ("SSR") 96-8p); SSR 96-8p, 1996 WL 274184, at *1 (July 2, 1996) (defining work on a *regular and continuing basis as eight hours per day, five days per week*)). Thus, one may infer, from Dr. Shaw's opinion, his conclusion that plaintiff is able to perform work on a

---

[5]The ALJ also evaluated the December 6, 2019 opinion of state agency medical consultant L. Antone Raymundo, M.D.  (T. 19).  Dr. Raymundo's opinion was issued upon plaintiff's request for reconsideration, at which time he found that plaintiff was capable of performing modified light work. (T. 91–96).  The ALJ found Dr. Raymundo's opinion unpersuasive, finding that the evidence reflected plaintiff suffered from more restrictive exertional limitations. Plaintiff does not appear to dispute the ALJ's treatment of Dr. Raymundo's RFC assessment.

sustained basis and meet a schedule.  *See Ana C.-M. v. Kijakasi*, No. 3:20-CV-296
(DEP), 2021 U.S. Dist. Lexis 138352 at *18 (N.D.N.Y. July 23, 2021) (noting that the
POMS allow the court to "infer that those state agency consultants concluded plaintiff
is able to perform on a sustained basis and meet a schedule.").  This would, presumably,
infer a conclusion by Dr. Shaw that plaintiff's time off-task relative to bathroom breaks
would not preclude her from performing unskilled work at an exertional level reflecting
his opined limitations.

The ALJ also provided adequate reasons for incorporating Dr. Shaw's less
restrictive limitations into his RFC determination, over those opined by Dr. Hila.
Indeed, both medical experts recognized that plaintiff's treatment for Crohn's disease
has fluctuated, due to her varying and inconsistent responses to medication.  In
September 2018, plaintiff reported to Dr. Hila that she was feeling "markedly better
from a GI point of view[,]" and that her "abdominal pain has almost completely
disappeared" in response to her current treatment.  (T. 500).  Her physical examination
was unremarkable, and Dr. Hila planned for plaintiff to continue with treatment.  (T.
501–02).  In January 2019, plaintiff returned to Dr. Hila with complaints of "severe
pain around the belly button, vomiting and blood in [her] stools[.]" (T. 503).  Plaintiff
indicated that a week after her last infusion treatment, she started feeling sick again
with recurrent episodes of abdominal pain, diarrhea and rectal bleeding.  (T. 504).  Dr.
Hila surmised that plaintiff was having a "flare-up of her Crohn's disease," and
adjusted plaintiff's medication accordingly.  (T. 506).

Plaintiff returned in February 2019, reporting that she was doing "a little better."

(T. 507).  Specifically, plaintiff indicated that she had been "doing better for the first 4-5 weeks after [her] infusion [treatments],"[6] after which she found herself feeling sick again with abdominal pain, severe fatigue and diarrhea.  (T. 508).  Her physical examination generated normal results.  (T. 509).  Dr. Hila commented that plaintiff was "only partially responding" to her current treatment, but that the results were "better" than other past treatment.  (T. 510).  Plaintiff reported another "flare-up" of her Crohn's disease to Dr. Hila at her May 2019 appointment, with "increased bowel movements" and fatigue.  (T. 511).  She still reported that she did "really well when she first has [the] infusion." (*Id.*).  Dr. Hila  acknowledged that plaintiff "does well after the infusion [treatment], but within a couple of weeks before she is due for repeat infusion she starts to feel sick gain with diarrhea and abdominal pain."  (T. 512).  The treating provider noted that plaintiff was "clearly responding to [her current treatment], however this is not totally controlling her disease."  (T. 514).

Plaintiff returned to Dr. Hila for a follow-up appointment in June 2019, where she displayed normal results upon physical examination.  (T. 447).  Dr. Hila noted that plaintiff had been having "severe flareup[s] of her Crohn's disease" over the last few weeks, with recurrent episodes of abdominal pain and diarrhea with bloody bowel movements.  (T. 445).  She noted that the benefits of plaintiff's infusion treatments were still apparent, but were not lasting until plaintiff was due for her next dose.  (*Id.*).  Thus, Dr. Hila concluded that plaintiff had "stopped responding" to her current treatment, and indicated her intent to change plaintiff to a different medication.  (T.

---

[6]It appears that plaintiff received infusion treatment relative to her Crohn's disease every eight weeks. (T. 503).

447).

Although Dr. Hila's treatment records certainly indicate that plaintiff suffered intermittent bouts of diarrhea and abdominal pain, there is no evidence in support of her ultimate opinion that plaintiff's symptoms, even during a flare-up, caused plaintiff to suffer from incontinence or an uncontrollable urgency so severe that she required a break to use the bathroom every thirty minutes, or would need to lie down for the entirety of her day.  Conversely, while Dr. Shaw reviewed the objective medical evidence of record and recognized that plaintiff suffered from intermittent flare-ups of her Crohn's disease, he also took into consideration her physical examination findings, response to treatment, and daily activities before concluding that plaintiff could perform full time work at a modified sedentary level.  Any argument by plaintiff that the ALJ was required to rebut each of Dr. Hila's limitations for off-task behavior, or greater bathroom breaks, with a more specific contrary medical opinion is unavailing. *See Smith v. Berryhill*, 740 F. App'x 721, 725–26 (2d Cir. 2018) ("Smith contends no physician contradicts the opinions of Smith's three treating physicians as to his ability to stay on task and maintain regular attendance . . . . But the ALJ was not required to identify evidence explicitly rebutting the opinions of Smith's treating physicians before discounting or rejecting them.").

Based on the totality of the medical evidence, the ALJ considered and accommodated plaintiff's reported Crohn's disease symptoms of abdominal pain, stress, fatigue, and diarrhea by restricting her to performing sedentary work in a low stress job, with postural limitations, a restriction on hazards, and "an expanded allowance to use

the restroom." (T. 20). The court finds that the ALJ's determination is supported by substantial evidence, including Dr. Shaw's opinion. Although there may be evidence in the record that would support a contrary RFC determination, it is not for this court to reweigh the evidence. *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019). "[O]nce an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (internal citation omitted). In this case, the ALJ resolved conflicting evidence and made his RFC determination based on the totality of the record. Thus, remand is not warranted on this basis.

## VII.   APPEALS COUNCIL REVIEW

### 1.   Legal Standards

At the final stage of the administrative process of adjudicating claims for benefits under the Social Security Act, the regulations authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). "If the new evidence relates to a period before the ALJ's decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Tammie S. v. Berryhill*, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *5 (N.D.N.Y. Feb. 22, 2019) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). "[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner's] final decision." *Id.*; *see also* §§ 404.981, 416.1481.

"The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision." *Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016) (citation omitted).  As such, "the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017), *report and recommendation adopted*, 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017).

### 2.    Application

Plaintiff argues that the Appeals Council erred in failing to assess the persuasiveness of Dr. Hila's July 2020 opinion submitted as part of her request for review.  (Pl.'s Br. at 12–13).  Plaintiff cites to recent case law from this district in support of her position that it was legally insufficient for the Appeals Council to "merely acknowledge that they reviewed new evidence from a treating physician," without specifically evaluating it.  *See Leah H. v. Comm'r of Soc. Sec.*, No. 3:20-CV-455 (CFH), 2021 WL 4033129, at *10 (N.D.N.Y. Sept. 3, 2021).  In *Leah H.*, which was decided under the old regulations regarding the evaluation of medical evidence, the court ordered remand due to the Appeals Council's "summary dismissal" of new evidence submitted by plaintiff's treating physician, and failure to explain what weight was afforded to the opinion pursuant to the treating physician rule.  *Id.* Here, plaintiff

20

maintains that a proper evaluation of Dr. Hila's July 2020 opinion would have changed the outcome of her case.

In response, defendant contends that there is no reasonable possibility that Dr. Hila's July 2020 opinion would have influenced the Commissioner to decide plaintiff's application differently, because it "largely mirrors" Dr. Hila's previous opinion from December 2019, which the ALJ supportably rejected.  (Def.'s Br. at 17–18).  Defendant further argues that the Appeals Council was under no obligation to explain the persuasiveness of Dr. Hila's July 2020 opinion where, such as here, they merely denied the request for review of a determination as opposed to issued a new decision. Defendant urges this court to reject the plaintiff's argument to the contrary, and cites to recent case law from this district specific to this issue.  *See Jessica W. v. Saul*, No. 5:19-CV-1427 (DEP), 2021 WL 797069, at *9 (N.D.N.Y. Mar. 2, 2021) ("[W]hen the Appeals Council merely denies a request for review of a determination, it is under no obligation to explain the weight given to a treating source opinion submitted as new evidence following an ALJ's decision.").

As the Commissioner notes, Magistrate Judge Peebles thoroughly addressed this issue in *Jessica W.*, which, like *Leah H.*, was decided under the old regulations.  In *Jessica W.*, Judge Peebles explained that the version of the regulations "in effect at the time [the] plaintiff's application was filed provided that the agency 'will always give good reasons in [the] *notice of determination or decision* for the weight [given] to your treating source's medical opinion.' " 2021 WL 797069, at *8 (quoting 20 C.F.R. § 416.927(c)(2)). Judge Peebles further concluded that the Appeals Council was not

required to apply the treating physician rule and provide "good reasons" for its denial of review because

> [u]nder the agency's procedures, an Appeals Council's denial of a plaintiff's request for review is neither a "determination" nor a "decision." When a plaintiff seeks review by the Appeals Council, that body "may deny, or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the [ALJ]." 20 C.F.R. § 416.1467. As can be seen, the regulation itself explicitly provides that only when the request to review is granted does the Appeals Council issue a "decision." *Id.*; *see also* 20 C.F.R. § 416.1481 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.").

*Id.*

Judge Peebles also addressed the contrary line of district court cases within this Circuit, holding that the Appeals Council is required to explain its reasons for rejecting a treating physician's opinion when it denies review. *See id.* at 7. He surmised that "[t]he apparent genesis of the line of cases . . . finding such an obligation appears to be a magistrate judge's report and recommendation in *Shrack v. Astrue*, 608 F. Supp. 2d 297 (D. Conn. 2009)[.]" *Id*. In *Shrack*, "[a]lthough the Appeals Council identified the additional new evidence[, which included opinions of a treating physician,] it did not specifically address any of it in its decision denying review, instead stating that '[it] found no reason under [its] rules to review the [ALJ]'s decision.' " *Jessica W.*, 2021 WL 797069, at *8 (quoting *Shrack*, 608 F. Supp. 2d at 302). "Citing to *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999), the magistrate judge [in *Shrack*] issued the sweeping proclamation that 'the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating physician.' " *Id*.

22

(quoting *Shrack*, 608 F. Supp. 2d at 302).

However, a distinction seemingly overlooked by the Court in *Shrack* is that in *Snell*, "rather than merely denying review of an ALJ decision, the Appeals Council addressed the merits of the matter *sua sponte*, and reversed the decision of the ALJ to grant benefits." *Jessica W*., 2021 WL 797069, at *8 (citing *Snell*, 177 F.3d at 129-30). In *Snell*, "the Appeals Council proactively considered the record and issued a merits-based decision and, in doing so, was plainly obligated to apply the treating source rule, just as an ALJ must when making an initial determination." *Id.* (citing *Snell*, 177 F.3d at 133). The Appeals Council's actions in *Snell* were different from the actions taken in *Shrack* where the "Appeals Council simply denie[d] review, [and] the focus for a reviewing court [wa]s upon the ALJ's decision, which represents the final determination of the agency. . . ." *Id*. (citing 20 C.F.R. § 416.1481; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

Judge Peebles further relied on a Tenth Circuit decision in explaining the distinction between an Appeals Council denial and decision.[7]  In *Vallejo v. Berryhill*, the court held that because the Appeals Council "simply denied review . . . it was not required to follow the same rules for considering opinion evidence as the ALJ followed[.]" 849 F.3d 951, 955-56 (10th Cir. 2017).  The Tenth Circuit explained that

---

[7]Judge Peebles recognized that "the Second Circuit has offered no guidance regarding th[is] issue, and the court specifically declined to consider the question as recently as 2015. *Jessica W.,* 2021 WL 797069, at *7 (citing *Lesterhuis v. Colvin*, 805 F.3d 83, 89 (2d Cir. 2015) ("[B]ecause we hold that the ALJ's decision was not supported by substantial evidence, we need not consider [the plaintiff's] alternative argument that the Appeals Council has an independent obligation to provide 'good reasons' before declining to give weight to the new, material opinion of a treating physician submitted only to the Appeals Council and not to the ALJ.")).

although "an express analysis from the Appeals Council would be helpful to judicial review . . . 'nothing in the statutes or regulations' requires the Appeals Council to provide that analysis." *Vallejo*, 849 F.3d at 956 (quoting *Martinez v. Barnhart*, 444 F.3d 1201 (10th Cir. 2006)).  Relying on the text of the regulations and the Tenth Circuit's rationale, Judge Peebles held that *Shrack "*was wrongly decided," and "when the Appeals Council merely denies a request for review of a determination, it is under no obligations to explain the weigh to a treating source opinion submitted as new evidence following an ALJ's decision." *Jessica W*., 2021 WL 797069, at *8-9.

The same reasoning has since been applied by courts considering disability applications subject to the new regulations regarding the evaluation of medical evidence.  In *Bruce Wayne C. v. Commissioner of Social Security,* No. 5:21-CV-160 (CFH), 2022 WL 1304024, at *3 (N.D.N.Y. May 2, 2022), plaintiff argued that remand was required because the Appeals Council summarily denied review of the ALJ's decision without (1) providing any reason as to why plaintiff's newly submitted evidence from a treating source would not have changed the ALJ's decision, and (2) analyzing the opinion under the revised regulations for examining medical opinions. Relying on Judge Peebles' analysis in *Jessica W.*, the *Bruce Wayne C.* court agreed that in merely denying a request for review of a determination, the Appeals Council was under no obligation to explain the weight of the treating source opinion submitted as new evidence following the ALJ's decision.  *Id.* at 4.  In further support of its holding, the court recognized that, in addition to the Tenth Circuit, the First, Fourth, Fifth, Seventh, Eight, Ninth, and Eleventh Circuits had "similarly distinguished the

24

articulation requirements for the Appeals Council denying review versus it issuing a decision." *Id.* at 5 (listing cases).

The *Bruce Wayne C.* court also looked to the language of the revised regulations applicable to plaintiff's claims.  Specifically, the court focused on the SSA's representation that "[w]e will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." *Id.* at 6 (quoting 20 C.F.R. § 404.1520c(b)). The court further recognized that the SSA defines "[w]e or us mean[ing], as appropriate, either the Social Security Administration or the State agency making the disability or blindness determination." *Id.* (quoting 20 C.F.R. § 404.1502(j)). The SSA defines "determination" as "the initial determination or the reconsidered determination." 20 C.F.R. § 416.1401. Thus, the court concluded that in denying review, the Appeals Council is not making the initial or reconsideration disability determination and is therefore not a part of the "we" required to "articulate" the persuasiveness of a newly submitted medical opinion. *Id*.

For the same reasons articulated in *Jessica W.* and *Bruce Wayne C.*, including the regulatory distinction between an Appeals Council's denial and decision, as well as the vast majority of Circuit court's which have acknowledged that distinction, this court likewise holds that the Appeals Council was not required to explain its reasoning for denying review of the ALJ's decision in this instance.  *See also Karen S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-960 (CFH), 2022 WL 462086, at *9, n.9 (N.D.N.Y. Feb. 15, 2022) (acknowledging "Magistrate Judge Peebles' conclusion that the cases that have

held that the Appeals Council must provide good reasons for rejecting a treating physician's opinion appear based on a misreading of the caselaw[ ]" but declining to reach the argument).  It is readily apparent that the Appeals Council was under no obligation to explain the persuasiveness of the new evidence by Dr. Hila, as they did not issue a determination or decision based on the merits of plaintiff's claim. (T. 1–6).

To the extent plaintiff argues that Dr. Hila's July 2020 opinion would have changed the underlying disability determination, we reiterate that it is not for this court to review the Appeals Council's conclusion regarding the medical opinion. *See Jessica W.*, 2021 WL 797069, at *9 ("[The p]laintiff's contention that the court has the authority to review the Appeals Council's conclusion regarding the new medical opinion is mistaken."); 20 C.F.R. § 416.1481 ("[T]he administrative law judge['s decision,] if the request for review is denied, is binding[.]").  However, "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision[.]" *Perez*, 77 F.3d at 45.  Thus, the court will consider whether, in light of the addition of Dr. Hila's July 2020 opinion to the record, the ALJ's determination is supported by substantial evidence.

The first section of Dr. Hila's July 2020 questionnaire sets forth plaintiff's relevant conditions and diagnoses, under which the treating provider indicated plaintiff suffers from "active Crohn's disease with chronic abdominal pain and diarrhea."  (T. 41).  Dr. Hila further indicates that plaintiff's "elevated stool calprotectin demonstrates active disease with poor response to therapy."  (*Id.*).  Otherwise, the remainder of the

26

check-box form indicates that in the context of an eight hour workday, plaintiff would require unlimited access to the bathroom, that her bathroom use would be immediate and urgent, and that she would be off-task greater than 33% of the workday and absent from work more than four days per month. (T. 41–42).

At the outset, Dr. Hila's July 2020 opinion tracks the similarly restrictive limitations opined in her opinion rendered approximately six months earlier, which, as previously discussed, the ALJ explicitly considered and found unpersuasive. Both opinions indicate that plaintiff absenteeism, time off-task, and need for frequent, unscheduled breaks throughout the work day would be work-preclusive. With the exception to a reference to "elevated stool calprotectin" as confirmation of plaintiff's Crohn's disease diagnosis, Dr. Hila's July 2020 opinion fails to support her significant functional limitations with citations to the objective medical evidence, or otherwise substantive explanations, for the restrictive functional limitations opined.

The new evidence submitted by Dr. Hila was also inconsistent with other evidence in the record. As the ALJ noted in his evaluation of the December 2019 opinion, Dr. Hila's significant limitations did not comport with her own longitudinal treatment history of plaintiff, showing unremarkable physical examinations and notable weight gain. (T. 20). Nor was there any other indication in Dr. Hila's treatment records that plaintiff would require "unlimited access" to the bathroom, or that her bathroom use was so "urgent and immediate" that it precluded her from performing sedentary work as modified by the ALJ in his RFC determination. The new evidence was also inconsistent with the physical examination findings of plaintiff's primary care provider,

as well as the opinion of state-agency consultant Dr. Shaw.  (*Id.*).

Based on the foregoing, Dr. Hila's July 2020 opinion does not show a reasonable probability of changing the ALJ's decision.  Because the ALJ's decision remains supported by substantial evidence, remand is not warranted on this basis.

## VIII.  STEP FIVE DETERMINATION

### A.  Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform.  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper.  *Id*. at 276-77.

## B.    Application

In order to determine whether there were jobs that existed in significant numbers in the national economy that plaintiff could perform, the ALJ asked the VE a hypothetical question that mirrored his ultimate determination of plaintiff's RFC. (T. 61–65).  At the request of the VE, the ALJ framed plaintiff's limitation for "ready access to the bathroom" in the appropriate vocational terms.  (T. 63–65).  The VE testified that, based on his professional experience, there were a series of jobs available in the national economy that an individual with that RFC would be able to perform. (T. 61–65).  The ALJ relied on this testimony at step five. (T. 21–22).  Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that the Clerk enter judgment for the **DEFENDANT**.


Dated: June 10, 2022

Andrew T. Baxter
U.S. Magistrate Judge